UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
DORIS ANDERSON,

            Plaintiff,

  -against-

THE CITY OF NEW YORK, NEW         **MEMORANDUM AND ORDER**
YORK CITY POLICE DEPARTMENT,     1:14-cv-5478(FRB)(VMS)
and P.O. BRANDON DILDY (Tax Reb
#952685),

           Defendants.
--------------------------------------------------x

*Appearances:*
*For the Plaintiff*                     *For the Defendant*
ROBERT JOSEPH DI GIANNI, JR      SHIRA RACHEL SISKIND
159 20th Street, Suite 1B-20         New York City Law Department
Brooklyn, NY 11232                  100 Church Street
                                      New York, NY 10007

**BLOCK, Senior District Judge:**

      Plaintiff Doris Anderson brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 against the City of New York, its police department ("NYPD"),[1] and NYPD Officer Brandon Dildy (collectively, "defendants") alleging sixteen claims stemming from a traffic stop, arrest, and subsequent events. Of these claims, defendants move for partial summary judgment under Federal Rule of Civil Procedure 56(a) on Anderson's false arrest, false

---

[1] However, because the NYPD is not a suable entity, all claims against the NYPD are dismissed. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

imprisonment, *Monell*, deliberate indifference to medical needs, and negligence claims.

The Court grants defendants' motion as to the false arrest, false imprisonment, *Monell*, and negligence claims and denies the motion as to the deliberate indifference claim.

# I

The parties agree on the following facts, except where noted.

## A.   The Initial Stop and Arrest

On June 11, 2013, Anderson was driving with her boyfriend, Jamar Davis. Officer Dildy stopped her car because he could not see through its tinted windows.[2] He discovered Anderson was driving on an expired license. Officer Dildy ran the license through a police computer program, which informed him of an active warrant. Officer Dildy then placed Anderson under arrest.

In fact, the warrant was invalid. Anderson, who had been arrested before for the same reason, carried a certificate of disposition explaining its invalidity. She presented the certificate to Officer Dildy, but he refused to acknowledge it and arrested her anyway.[3]

---

[2] Testing the windows with a tint meter revealed that the tint was illegal under New York State Vehicle and Traffic Law § 375 (12-b), which states that a motor vehicle may not be operated if a window "has a light transmittance of less than [70%]." The rear window of Anderson's car had a light transmittance of 34%.

[3] Defendants dispute these events. At a deposition, Officer Dildy claimed not to remember whether Anderson showed him the certificate of disposition. He also testified that his understanding was that whether a suspect could forestall an arrest by presenting such a certificate "depends" on whether a superior officer could "verify" the document. Dildy Dep. at 25:22-26:11.

B.  **Anderson's Diabetes**

When she was arrested, Anderson informed Officer Dildy that she had Type 2 diabetes and required regular insulin to keep her blood sugar and blood pressure low.[4] However, Officer Dildy refused her access to this medication and took her to the 113th Precinct. Davis followed the police vehicle to the precinct and attempted unsuccessfully to convince him to give Anderson her medication.

C.  **The Precinct**

At the precinct, Anderson voluntarily turned over a small bag of marijuana she had on her person. At the request of Davis, Officer Dildy agreed to give Anderson food but not medicine. Anderson immediately began to feel ill after eating the food, asked again for her medication, and was denied. She then told Officer Dildy that she might die without it, but he told her that she would not be provided medical treatment until she was transferred to Rikers Island.[5]

D.  **Rikers Island and Criminal Court**

---

[4] She was required to take two insulin pills daily and inject insulin eight to ten times a day, when she eats, and before bedtime.

[5] Officer Dildy purports to dispute these facts in his Rule 56.1 statement, on the basis that he is not allowed to provide medication to a person in custody and instead is required to call medical professionals when a detainee requests medication. However, this is less a factual dispute and more legal argument as to what he was required to do for a sick detainee. Regardless, he admits that he did not call any medical professionals for Anderson.

Anderson was processed through Central Booking. While there, she told staff she was feeling okay for the moment. She was then transferred to Rikers Island, where she was held overnight. There, she was denied medical attention until the following morning, when she was provided insulin for the first time. Her blood sugar was measured, and it registered over 500mg/dL.[6] Anderson testified that any level above 200mg/dL is "life-threatening" and could trigger a diabetic coma. Anderson Dep. at 98:15-22.

Anderson was then taken to criminal court for a hearing on the invalid warrant. When she appeared before New York Supreme Court Justice Michael Gary, he acknowledged the administrative mix-up and released her with an updated certificate of disposition. Anderson was in custody for 14 hours and 32 minutes.

**E.     Aftermath**

Anderson testified that when she returned home, her insulin levels were still dangerously elevated. She was required to change her insulin type and dosage because of the gap in medication. It took her one week to regulate her system again. During that week, her symptoms included frequent burning urination, blurred vision, loss of appetite, and leg numbness. Defendants dispute whether she had to change her insulin dose but otherwise do not dispute these facts.

---

[6] While the parties did not provide a unit for the blood sugar levels, blood sugar is typically measured in milligrams of glucose per deciliter of blood (mg/dL). *See Vassallo v. City of New York*, 2016 WL 6902478, at *2 n.2 (S.D.N.Y. Nov. 22, 2016) (describing blood sugar measurement).

Anderson ultimately pleaded guilty to disorderly conduct. She filed this action on September 18, 2014.

## II

### A. Motion for Summary Judgment Standard

A court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party is required to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[I]t is well established that 'conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment.'" *Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

When evaluating a motion for summary judgment, the court "construes the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences in [her] favor." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). No genuine issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, "that the evidence supporting the non-movant's case is so scant that a rational jury could not find in [her] favor." *Chertkova v. Conn. Gen. Life*

## B.     False Arrest and Unlawful Imprisonment

A § 1983 claim for false arrest flows from the Fourth Amendment right of an individual to be free from unreasonable seizures.[7] *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "The existence of probable cause to arrest . . . 'is a complete defense to an action for false arrest[.]'" *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

Probable cause is an objective inquiry based on the facts known by the arresting officer at the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "A claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

"[W]hen an officer has probable cause to believe a person has committed even a minor crime in his presence . . . [t]he arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008). "[A]n officer's direct observation of even a minor traffic violation is sufficient probable cause to arrest the violator." *Smart v. City of New York*, 2009 WL 862281, at *4 (S.D.N.Y. Apr. 1, 2009) (citing *U.S. v. Scopo*, 19 F.3d 777, 781-82

---

[7] Anderson's related claim for unlawful imprisonment is identical to her false arrest claim and is "subject to the same analysis." *Seitz v. DeQuarto*, 777 F. Supp. 2d 492, 501 (S.D.N.Y. 2011).

6

(2d Cir. 1994) (holding officer had probable cause to arrest defendant committing "minor" traffic violation)).

Anderson argues the officers falsely arrested her based on the invalid warrant and unreasonably refused to consider her certificate of disposition. However, she does not dispute that the tint on her car's windows was illegal or that she was driving with an expired license. Therefore, the officers had objective probable cause to arrest her for these traffic violations. Because these violations provided probable cause, Anderson cannot prevail on her false arrest claim.[8]

## C. *Monell* Liability

Anderson also alleges *Monell* liability against the city predicated on its failure to track certificates of disposition in its computer system or train its officers to acknowledge certificates of disposition when making arrests. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). "[A] plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). However, because Officer Dildy had probable cause to arrest Anderson, she did not suffer

---

[8] The Court also notes that it is likely arguable that Officer Dildy acted reasonably in relying on the arrest warrant and disregarding the certificate of disposition since he did not have a way to prove the authenticity of the certificate. Since "arguable probable cause" provides qualified immunity for an arrest, *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004), even if Officer Dildy had only arrested Anderson for the active warrant, he would likely have qualified immunity for the decision. However, the Court need not decide the issue because it dismisses on other grounds.

a constitutional deprivation. Therefore, she cannot meet the third element of this test, and her *Monell* claim fails.[9]

## D. Deliberate Indifference to Medical Needs

A deliberate indifference claim for a pre-trial detainee is brought under the Due Process Clause of the Fourteenth Amendment. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009), *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).[10] Anderson must satisfy a two-prong test: First, she must show "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; second, she must demonstrate that Officer Dildy "acted with at least deliberate indifference to the challenged conditions."[11] *Darnell*, 849 F.3d at 29. Denial of adequate medical care constitutes a deprivation of the right to due process. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

### 1. Sufficiently Serious Denial of Medical Care

To show a denial of medical care is "sufficiently serious," Anderson must show that

---

[9] Anderson does not allege that any of her other claims amount to a *Monell* violation.

[10] Contrast with a post-conviction detainee, who must bring this claim under the Eighth Amendment. *Caiozzo*, 581 F.3d at 69. Because a pre-trial detainee has not been sentenced yet, her imprisonment is not a punishment, and the Eighth Amendment does not apply. *Id.*

[11] The first prong is identical under the Eighth and Fourteenth Amendment tests; however, the second prong was recently substantially modified by the Second Circuit in the Fourteenth Amendment context. *See Darnell*, 849 F.3d at 36. These modifications will be discussed as relevant.

8

"[her] medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). When the basis for the claim is "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* of treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support" a claim. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).[12]

"[D]iabetes is a sufficiently serious medical condition[.]" *Vassallo v. City of New York*, 2016 WL 6902478, at *9 (S.D.N.Y. Nov. 22, 2016); *see also Colon v. Cty. of Nassau*, 2014 WL 4904692, at *6 (E.D.N.Y. Sept. 26, 2014) ("[c]ourts in this Circuit have held that 'diabetes is a sufficiently serious medical condition to meet the objective prong' of a deliberate indifference claim") (quoting *Beatty v. Davidson*, 713 F. Supp. 2d 167, 174 (W.D.N.Y. 2010)). And the risk of harm caused by short term denial of insulin can also constitute a sufficiently serious deprivation of medical treatment. *See Vassallo*, 2016 WL 6902478, at *9 (holding "infrequent blood sugar monitoring and insulin provision . . .

---

[12] This prong is often referred to as the "objective prong," and the second prong is often referred to as the "subjective prong." These labels are no longer accurate in the wake of *Darnell*, 849 F.3d 17, discussed below, which replaced the second prong's subjective test with an objective one. However, this outdated labeling scheme is used in virtually all the case law, so the Court notes the potential for confusion.

9

inadequate insulin treatments . . . and delayed or inadequate treatment by specialists . . . allegedly resulting in consistently and abnormally elevated blood sugar levels" were sufficiently serious deprivations, if proven, to meet the objective prong).

Here, defendants do not dispute that Anderson was denied access to her insulin. Nor do they dispute that this denial caused her to suffer elevated blood sugar levels, which caused at least some long term symptoms, including burning urination, blurred vision, loss of appetite, and leg numbness. Anderson also testified at deposition that her condition permanently worsened as a result of her inability to access insulin while incarcerated, such that she had to change her medication and dosage in response.

Defendants contend that because Anderson never expressly asked to go to the hospital and told several people that she was feeling okay during the time period when she was denied medication, her condition was not sufficiently serious. However, these statements at most raise a question of fact as to the severity of Anderson's symptoms. Her testimony that she was feeling okay may undercut her credibility as to her subjective experience of these symptoms. However, Anderson only said she was feeling okay after being repeatedly denied medical treatment for hours. She testified that she made these statements because she had given up on receiving treatment and felt it was futile to continue to fight Officer Dildy.

A reasonable factfinder could believe Anderson's explanation for her statement that she felt okay and credit the evidence that her condition permanently worsened as a result

of the denial of insulin. How to weigh and interpret these statements is a material question of fact that precludes summary judgment.

2. **Deliberate Indifference**

The test for the second prong, deliberate indifference, was reformulated in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). Before *Darnell*, the test was subjective—a plaintiff needed to prove "that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware." *Caiozzo v. Koreman*, 581 F.3d 63, 71 (2d Cir. 2009), *overruled by Darnell*, 849 F.3d 17. This was because the Second Circuit applied the Eighth Amendment subjective intent standard for deliberate indifference to Fourteenth Amendment claims. *Id.*

In *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), however, the Supreme Court held that claims brought under the Fourteenth Amendment do not require the same subjective intent standard as claims brought under the Eighth Amendment. 135 S. Ct. at 2473. The Second Circuit, recognizing that *Kingsley* "undercut the reasoning" in *Caiozzo*, overruled *Caiozzo* and reformulated the deliberate indifference test. *Darnell*, 849 F.3d at 33. Now,

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Id.* at 35. "In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate

11

indifference claim is defined objectively." *Id.*

The key phrase added to the test is "should have known." *Id.* A plaintiff no longer needs to show the defendant had actual knowledge that the conditions of confinement (here, the denial of access to medical treatment) posed an excessive risk to the health and safety of pre-trial detainees.

Anderson told Officer Dildy repeatedly that she faced a substantial risk of harm, including a possibility of death. Furthermore, defendants admit in their Rule 56.1 Statement that "Officer Dildy testified that if an individual needs [her] medication, he is not authorized to provide it to that person, but *is required to call an ambulance.*" Def.'s Rule 56.1 Statement ¶ 85 (emphasis added). But he did not do so. Based on these two facts, a reasonable factfinder could conclude that Officer Dildy knew or should have known that Anderson's diabetes, if untreated, posed an excessive risk to her health and safety, and that his failure to follow his training and call an ambulance recklessly disregarded this risk.

Defendants, arguing under the old standard,[13] seek summary judgment because Anderson did not expressly tell Officer Dildy that she needed hospitalization, and therefore, he had no reason to know that her failure to receive insulin posed a risk to her health.

Defendants cite only to *Ferguson v. Cai*, 2012 WL 2865474 (S.D.N.Y. July 12, 2012) for the proposition that a diabetic plaintiff cannot satisfy the old subjective standard by merely telling an officer she needs insulin. However, *Ferguson* was an Eighth Amendment

---

[13] The briefing in this case was filed before *Darnell* was decided.

case; therefore, post-*Darnell*, its reasoning no longer applies under the Fourteenth Amendment.

Regardless, *Ferguson* is factually distinguishable. There, the plaintiff "[did] not allege that he informed [defendant] that he was experiencing any discomfort or pain due to the delay in receiving the medicine" and did not allege that the defendant "was aware that depriving [plaintiff] of insulin on a single occasion would create a substantial risk of harm." *Id.* at *5. Here, however, Anderson told Officer Dildy that she faced a substantial risk of harm without her medication. Thus, *Ferguson* is inapposite.

### 3. Deliberate Indifference Conclusion

Because Anderson has demonstrated genuine issues of fact as to (1) whether Officer Dildy's failure to treat her condition was a sufficiently serious denial of medical care, and (2) whether he was deliberately indifferent to the risk to Anderson's health caused by this denial, defendants' motion for summary judgment as to this claim fails.

### E. Negligence

Defendants finally challenge Anderson's bevy of negligence claims, including common law negligence, negligent supervising and training, and negligent hiring and retention. Anderson limits her claim for common law negligence to the events leading up to the alleged false arrest. However, as discussed above, Officer Dildy had probable cause to arrest Anderson. Therefore, he was not negligent in doing so. *See Thomas v. Cty. of Putnam*, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003) (dismissing negligence claim because

officers had probable cause to arrest plaintiff).

As for Anderson's negligent supervising, training, hiring, and retention claims, she has not put forward any facts supporting these claims; indeed, she has not named a defendant-official except Officer Dildy. Furthermore, under New York law, "[a] necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury[.]" *Kenneth R. v. Roman Catholic Diocese*, 229 A.D.2d 159, 161 (2d Dep't 1997). Anderson has provided no evidence of Officer Dildy's propensity for denying medical care, much less evidence of anyone else at the City having knowledge of such a propensity.

Therefore, these claims are all dismissed.

**F.     Remaining Claims**

Defendants did not challenge Anderson's excessive force, assault, battery, intentional and negligent infliction of emotional distress, failure to intervene, malicious prosecution, and malicious abuse of process claims. Upon reviewing the record, the Court sees no facts supporting these claims. Therefore, Anderson is instructed to inform the Court in writing by May 1, 2018 whether these claims will be pursued, and if so, on what factual basis they lie.

## III

Defendants' partial motion for summary judgment is denied as to Anderson's deliberate indifference to medical needs claim and otherwise granted.

**SO ORDERED**

                                               /S/ Frederic Block_____
                                               FREDERIC BLOCK
                                               Senior United States District Judge

Brooklyn, New York
March 12, 2018